## MARY GREGGORY v. A. N. GREGGORY.

Eastern Section. October 31, 1925.

Certiorari denied by Supreme Court, February 1, 1926.

1. **Husband and wife. Husband is liable for wife's attorney fee.**
   In an action by the wife against her husband to compel him to support her and her minor children where husband entered into a contract to support his wife and children upon her dismissing the bill, held her attorneys could maintain an original bill against the husband to recover a reasonable fee for representing her in the suit.

2. **Attorney and client. $100 held a reasonable fee for representing wife in suit for maintenance.**
   In an action by the wife against her husband to compel him to support her and her minor children. where it was shown the husband was a man of means and he entered into a contract to support his wife and children before case tried, held $100 was a reasonable fee for attorneys representing the wife.

Appeal from Chancery Court, Greene County; Hon. Hal H. Haynes, Chancellor.

Affirmed.

J. E. Briddle, and Shoun, Swingle and Milligan, all of Greeneville, for appellant.

Susong, Susong and Parvin, of Greeneville, for appellee.

PORTRUM, J. Mary Greggory instituted a suit, on April 28, 1924, in the chancery court of Greene county against her husband, A. N. Greggory, for the purpose of requiring him to make suitable provision for her and their minor children out of his estate, charging that he had cruelly mistreated her, had abandoned her and gone to Johnson City, where he spent most of his time, and she and their children were destitute and did not have the ordinary necessities of life, notwithstanding her husband was a man of property, owning very valuable pieces of real estate described in the bill; one hundred and forty acres on Sinking Creek, a store building in Afton, Tennessee, and other tracts of land described, including a three hundred acre farm on Hiwassee River, in McMinn county, as well as the owner of very valuable personal property. The value of the property is not stated in the bill, but it is estimated at $25,000 in the brief. It is charged that the husband failed to provide his children with school books, and it was necessary to borrow books for their use. The bill prayed for alimony, or that a suitable provision be made by the court for her and their children out of the estate of the husband, the question of divorce was not involved, the

wife seeking only that support due from her husband by both nature and law.

Soon after the filing of the bill the husband had an interview with his wife, and induced her to enter into an agreement with him whereby he would agree to furnish her an ample support, treat her kindly and in effect give her all the relief asked for in the bill. He took his wife to an attorney, who by the way was not the attorney representing him in the suit, nor the wife's attorney, and here they drew up a contract or agreement which provided that the wife should dismiss her bill at her cost. The agreement in part reads:

"Whereas the party of the first part (Mary Greggory) has on April 28, 1924, filed in the chancery court at Greenville, Tennessee, her bill against the second named party, asking for maintenance and support of herself and children, and,

"Whereas, it has been agreed between the parties hereto to settle and compromise said suits as follows:

"(A) Party of the first part named herein is to dismiss her bill brought against the second named party and heretofore set out.

"(B) The second named party hereby agrees and binds himself to furnish to the first named party and the children born to them, good and ample support. This support is to give provisions and clothing. The second named party agrees to furnish said support and to look after and care for the first named party and the chidren.

"(C) The second named party is also to help in the rearing, controlling, and governing of the children, and to aid the first named party in every way possible in this respect. Both parties agree to not be domineering, intolerant, or to give way to fits of temper, and to get along amicably and peaceably if possible. At all times they are to treat each other fairly, honestly, and in a way not to irritate each other.

"(E) The second named party, if he works away from home, as he has heretofore been doing on certain occasions, is to furnish while away, ample support for the first named party and the children upon which to live.

"This contract was made and executed in duplicate on the day and date above named, and a copy is to be filed in the chancery court cases and the suit filed therein is to be dismissed at the first named party's cost."

An order of dismissal was filed in vacation. Mary Greggory's attorney's Susong, Susong & Parvin, had given notice, prior to this contract, of an application to the chancellor at chambers for alimony pendente lite, but this application was not acted upon. At the first

term of court the said attorneys filed a petition in this cause, setting out the services rendered to the wife in the suit, and prayed the court to fix and allow them a reasonable attorney's fee. Later the petition was amended so as to allege that the services rendered were necessary to the proper comfort, care and support of the wife and children, and that the defendant was liable therefor as such, and it was agreed and an order entered that the petition be taken and treated as an original bill against the defendant.

The case came on to be heard before the chancellor upon the record in the case, etc., and the decree recites that the petitioners had furnished valuable services to the complainant Mary Greggory as her attorneys, resulting in the complainant's having obtained part of the relief sought, "the court is pleased to and does allow the sum of $100 to the petitioners, and it is accordingly adjudged and decreed that the petitioners have and recover of the defendant A. N. Greggory the sum of $100." From this decree the defendant Greggory has appealed, and he questions the right of the chancellor to grant a recovery against him, first, because the bill had been dismissed and alimony pendente lite could not be awarded by the court for the want of jurisdiction; and second, that the petitioners had no lien against the recovery for the reason that under the terms of the compromise no recovery is had to which the lien could attach. Authorities are cited in support of these contentions, and the court is inclined to agree with the soundness of both propositions, but this is not determinative of the lawsuit. The petition is treated as an independent bill against the defendant. It is averred that the services were necessary to the proper comfort and support of the wife, and that the husband is liable for this reason, it being a charge for which the wife is not personally liable and one for which the husband is personally liable.

Formerly married women could not employ attorneys, their identity being merged in that of the husband (30 C. J., Husband and Wife, sec. 345), and under the common law it was the duty of the husband to employ attorneys to protect the wife's rights and he was liable for their compensation.

When a husband did not perform his duty, then the wife might pledge the husband's credit.

"The right of the wife to pledge the husband's credit for necessaries, when unsupplied by him, is generally deemed to be founded upon the doctrine of the wife's implied agency. The agency of the wife is sometimes designated as an agency of necessity, and the husband is said to be estopped from disputing it by reason of his misconduct in failing to perform his legal obligation. Also the agency is said to be one implied in law. Accurately speaking, the 'agency in law' or 'agency

of necessity' spoken of by the courts in this connection is not referable to the law of agency. The liability of the husband is not dependent on any authority conferred by him, it may exist even though an agency in fact is wholly disproved by the evidence. The authority of the wife to purchase necessaries on her husband's account, as well as the liability of the husband therefor, need not be based on any theory of agency, expressed or implied. It results from a duty to furnish necessaries imposed upon the husband by law, as an incident of the marriage relation, and his failure or refusal to perform the duty; it is an authority to do for the husband what law and duty requires him to do and which he refuses or neglects to do for himself." 30 C. J., Husband and Wife, sec. 125.

"The authorities are in conflict, as to whether legal services rendered the wife are necessities for which the husband is liable. They are in conflict not only as to the general rule but also as to its application to legal services rendered in particular classes of cases." Id., sec. 147.

"Where the husband without good cause deserts the wife and fails to furnish her with such support as his means will warrant, the services of attorneys in instituting and prosecuting a statutory suit or proceeding to compel the husband to maintain the wife becomes an immediate necessity of the wife for which the husband is liable as much as he would be for necessary food or clothing purchased by the wife on the husband's credit." Id., sec. 155.

"Where it appears that a suit for judicial separation or divorce a mensa et thoro, is for the protection and support of the wife, and the conduct of the husband is such as to render its institution and prosecution reasonable and proper, or, in other words, were the suit is reasonably and justifiably instituted, the wife's attorney may recover, in an independent action against the husband, for his services." Id., 153.

We find these parties, the husband particularly rich, the wife poor and destitute, and from the admission of the husband as seen through the agreement made with the wife, he had unjustly mistreated and neglected her and their children, leaving her destitute and unable to protect herself against his wanton conduct, except that she pledge his credit for legal services to bring him to account. It appears that of all things most needed at the time by the wife was a competent attorney who would be more beneficial than a physician, because his services make the services of a physician unnecessary; more beneficial than clothing and food because they are temporary and the services of an attorney would provide all these things permanently. It is said the wife wearied in well-doing and

abandoned her attorneys before they 'rendered any service. Under the circumstances at the time she employed them their services were then necessary. - She had the right to pledge the husband's credit in order to obtain their present and future services in her behalf, and she did so, and they rendered valuable services for her, causing the husband to "bury the hatchet," to use the words of his counsel. It might be more appropriate to say the services rendered brought the husband to time, who made a confession and promised to mend his ways thereafter. We are of the opinion that he is liable for the services rendered his wife, and that the amount allowed of $100 is entirely reasonable. The judgment of the lower court is therefore affirmed and the appellant and his bondsmen will pay the cost of the appeal.

Snodgrass and Thompson, JJ., concur.